I call the case of number 20-10087, Kallberg Industries, LLC, versus Automotive Experts, Inc, and Michael Kunkel. Mr. Galvano for the appellant. There's Mr. Galvano. Okay, you can begin when you're ready. It pleads the court. Your Honor, Phil Galvano for Kallberg Industries, LLC. This is a Tennessee limited liability company. We are here today on appeal of an amended final judgment in the Southern District of Florida. The case began, Your Honor, as a deck action brought by Kallberg following its involvement in the emergency relief effort in Puerto Rico after Hurricane Maria. The deck action was to determine the relationship between the parties, the financial relationship between Kallberg, AEI, and Kunkel, the appellees. And I highlight this, Your Honor, because it's an interesting type of program when you have the Army Corps bringing in contractors to respond to emergency relief. And oftentimes, the boots on the ground get way ahead of having legally papered and specific agreements. The critical issues that I would like respectfully to bring to the court's attention this morning involve the trial court's complete disgorgement of total revenue received by Kallberg for equipment use with Kunkel, with one, no finding of conscious wrongdoing on the part of Kallberg, secondly, without making a distinction between gross revenues and profits, and third, failing to have AEI and Kunkel prove their damages for disgorgement. Let me ask you a quick question, and I don't think I'll be knocking you off your stride here because this is part of your number one. Maybe I've just missed it, but where in Florida law is this requirement of conscious wrongdoing as a sort of a prerequisite to a disgorgement remedy? Your Honor, I would cite you to Bailey v. Lewis. This is the 2nd District Court of Appeals here in Florida. And the court did an analysis, and it sets out what the disgorgement remedy is truly about. And I quote, So a disgorgement is a remedy designed to deter wrongdoers by making them unprofitable to engage in wrongful behavior. The object of a disgorgement remedy is to eliminate the possibility of profit from conscious wrongdoing. Now, there's not a case that sets out A through B elements and here's conscious wrongdoing, but a few, which I know Your Honors have looked at the cases cited by both the appellant and the appellee. All of these disgorgement cases have at the heart of them some bad act. And in our case, Your Honor, the court was tasked with determining the relationship between the parties and found that it was able to find agreement with, for example, personnel, truck price agreement, but the non-truck equipment said there was no agreement on the price to be paid for this equipment. And interestingly, he found this, the trial court found this, despite that AEI and Kunkel argued that there was an agreement, that the agreement was to pay what's called the DER rate. So the trial court found that testimony not credible, went on to say there is no agreement between the parties. And it's our position at this point, the court should have made a determination as to fair market value or the value of benefit to Kohlberg. And we're talking about $20,000 to $40,000 of equipment utilized for just a few months that was ultimately handed back to AEI. But instead what the trial court did was issue a complete disgorgement, which had ultimately a punitive effect on Kohlberg and created a windfall for AEI and Kunkel. And as I stated in Bailey v. Lewis, and at the heart of all these cases, even the cases that are most relied on by the appellant, such as FEC v. Lawrence, there's some act, and most of them, your honors, are criminal or... Yes. Responses to that law are inequity. And that's interesting because at the closing argument, the trial court had the same discussion. I, unjust enrichment is inequitable. No, unjust enrichment can be either equitable or at law. The wrong part is the fear, if you will, that unjust enrichment can get off to the plate and swing from the left side or the right side. I'm asking the question of holding the labels aside. They were seeking a sum of money. This was a personal liability claim, wasn't it? Yeah. As opposed to a disgorgement of an asset that was being wrongfully held by the other side. That might be a suit for disgorgement. That would be a suit almost in rem as opposed to a suit at law for personal liability. That is correct, your honor. And that seems to me to be the argument that you're making here, was whatever you call it, this was really a personal liability suit at law. But even assuming that that's the case, and even assuming that the judge used the wrong label, he called it disgorgement, everybody agreed that it was an unjust enrichment claim. And an unjust enrichment claim can be remedied at law by damages, personal liability. Why isn't that effectively what he did here? And any error in mischaracterizing it as disgorgement would effectively be harmless in this case. What difference does it make whether he called it disgorgement or not? I agree with you. This is a suit at law, not inequity. He wasn't seeking the return of a property that had been wrongfully retained by you. That might have been a disgorgement claim. But even assuming argue when it was at law, it seems to me the damages would have been exactly the same. The result would have been exactly the same. Regardless of the label he pasted on it. What I'm asking then is why isn't this error, if it be error, was harmless? Because respectfully, Your Honor, I would say the damages would not have been the same. As you correctly point out, the equipment in question was ultimately returned. The evidence on the record as to the value that was received by Kahlberg was put on by Kahlberg. And that was the $229,490. Kahlberg always had the intent to pay and came in seeking value. But I think it's important to point out that the trial court made a finding with regard to the mission and the program itself. In which it recognized that because these are unique circumstances that require the assumption of risk and require agility and quick movement, they are profitable. But went on to say it's exorbitant. And it begs the question, Your Honor, did the trial court have dissatisfaction with the program under the Army Corps of Engineers? And then as a result of that dissatisfaction, impose a punitive remedy on Kahlberg? And why is the remedy, I guess the question I'm having is I don't quite understand why the remedy was punitive in nature. It seems to me what the trial judge was saying was that you were unjustly enriched. A benefit had been conferred upon you, that is to say, the use of a whole lot of equipment for an extended period of time. And you were unjustly enriched, therefore, and you should be required to pay that sum for which you were unjustly enriched. That sounds to me like an action at law, and it seems to me he made specific findings going to that. Maybe I'm going to be able to remedy this. Your Honor, the trial court's reason why it's punitive, and that segues into the second point, because there was a conflation of gross revenues and profits. If there was to be a disgorgement, and the disgorgement was of a remedial, not punitive nature, then there should have been some consideration for the evidence of cost that was put on the record, like the overhead, the loans, hearing, machines, parts, administrative licensing, a recognition of the special benefit that Kahlberg brought to his mission. Conkle and AEI would not have been part of this mission. Let me ask my question in a slightly different way. As I understand Florida law, damages for unjust enrichment may be valued in two different ways. They can be valued on either the market value of the services or two, the value of the services or the benefit conferred on the party unjustly enriched. I took the trial judge to do the latter, not the former. Why wasn't there sufficient evidence to support a finding that you were unjustly enriched in this case? Your Honor, I wish the trial court had done the latter. The trial court moved on to a full disgorgement. The value of the benefit to Kahlberg in this case is the value of the use of that equipment for a period of a few months. That equipment ultimately left the mission and it was replaced, as I said, for $20,000 to $40,000. You come in and say you have this handful of equipment, and now we are going to disgorge every dime that you received in the down change from the program without any recognition of what overheading costs or any reasonable approximation is not correct. That's why I argue on behalf of Kahlberg that it was punitive in nature and created a windfall for AEI. Let me ask you another question before you sit down. What evidence was there in the record of costs that were specific to that equipment? Not overhead, not general administrative costs, but with respect to that equipment. Well, there was record evidence with regard to, for example, fuel costs, $60,000 to $70,000 in parts, and then fuel and maintenance. As you mentioned, there are also broader issues that weren't drilled down on. Again, if the employees are seeking the disgorgement, the burden of proving damages is on them. Thank you. Mr. Lee? Good morning. May it please the court. After a two-day trial with five live witnesses, one by deposition, with 133 exhibits entered into the court, the judge entered, as you know, detailed findings of fact with regard to not just the unjust enrichment, but also with regard to the claims regarding the employees. Now, opposing counsel in argument said that this was a total disgorgement of everything. That's not true. This is the equipment at issue. The only equipment at issue were items such as gas totes, pumps, and other items, and the court awarded damages on the unjust enrichment claim for only those items for the amount that was recovered by Kahlberg, Tennessee, for those specific items. There was no total disgorgement of all their revenue, all of their profit, and in fact, the record reflects that they had $3.6 million in profit from this venture that they undertook that took less than a year. And Kahlberg, Tennessee was founded or started in October of 2017 specifically to be a pass-through entity for the subcontractor, which was an entity called Kahlberg, Florida, and the agreement was that Kahlberg, Florida, the subcontractor to a company called Lewis Berger, would bill all the items and then would pass through directly to Kahlberg, Tennessee, everything that it received for these items. So when the other side says that there was a total disgorgement of everything, that's not the case. With regard to the trucks, the pickup trucks, the court found that there was a tacit agreement of $135 per day per truck, and the remaining amount, approximately $300,000-$400,000 per day, was kept by Kahlberg, Tennessee. With regard to the employees, there was a dispute originally as to whose employees those were, how much there was, but ultimately the court found that it was a $50 per day agreement of which automotive experts received approximately $287,000, but Kahlberg, Tennessee, for those same employees, received over $5.1 million. So when they say that all of the profits and all of the money went to my client, that's not the case. What went to my client was, number one, the money that there was an agreement on the trucks for $135 per day, number two, $50 per day per employee, and number three, the unjust enrichment claim, approximately $1.4 million in total for all the equipment that was ultimately utilized by Kahlberg, Tennessee. This was my client's equipment. It wasn't their equipment. They didn't have the ability to do this mission without my client and without the equipment, and the court went through a very detailed explanation of the findings that they brought my client in. They didn't pay my client for months. Then when my client started raising issues regarding nonpayment, they terminated him on January 1. My client then sent numerous demands for payment over the next few months. They continued to ignore him. They brought in, in the next four months, in the beginning of 2018, over $3 million in revenue, and they paid themselves all the funds in the record of a bank statement showing that rather than pay my client, they immediately transferred funds out to themselves, to Keith Kahlberg, to Matt Kahlberg, to his company that they established. Then ultimately, it was nine months later in October when they sent a check to my client for a grossly inadequate amount and said, here's your amount. It's final payment. By the way, even though my client's in Georgia and they're in Tennessee, we're filing an action in Florida for a declaration that the amount we decided we're going to pay you is the proper amount, which is when my client— Mr. Lee, may I ask you a question that I asked your colleague? Was Automotive's suit here, unjust enrichment suit, a suit that sounded in law or inequity? It was a suit that sounded in law. In the complaint, we established, we alleged in the complaint, that my client was damaged. In the pretrial stipulation, that both parties, even though they were unilateral, two pretrial stipulations were both submitted, that the issue in the case is whether my client was damaged and whether Kahlberg, Tennessee, was unjustly enriched and what was the amount of the damages. The reason I ask the question is, and I will tell you, just speaking for myself, I read the claims as sounding in law for unjust enrichment for benefits conferred on Kahlberg. But that's not quite what the district court judge did here. He used the phrase disgorgement, and in the dialogue that I read, you also used the word disgorgement. Disgorgement is an equitable concept, and it would normally be used if you were trying to recover a piece of property, real property or personal property that had been wrongfully retained by the wrongdoer in the case. But it seems to me there was a legal error here in calling this an action seeking disgorgement, which is plainly equitable. What do we do about the fact that, if you agree with me, that it wasn't really a disgorgement action? Isn't the district court all wrong? And isn't that reason enough to send it back? No, Your Honor. The title of the word disgorgement can also be utilized in the cases that we cited for purposes of a restitution as well. And the cases talk about where, in an unjust enrichment claim, where you're not seeking the market value of the services, but you're seeking the amount that the other side received, that the defendant received. You're seeking disgorgement slash restitution. It's the same issue. And the disgorgement, again, relates to the monies that would be provided that the ill-gotten gains from the defendant in this case. And the court found in their pre-trial stipulation, they even stipulated that disgorgement is a proper remedy and that disgorgement is a remedy to establish damages in a case such as this. So the case law talks about disgorgement, and it talks about the need to provide what's called restitution to the other side in exchange. And in the Alvarez case, the general case that talks about the issue of the party unjustly enriched, the court said, as you indicated, Your Honor, that the market value of the services or the value of the services to the party unjustly enriched. So when the court determined the value of the services to the party unjustly enriched for this specific equipment, that's what the court determined and called it disgorgement, when in fact it was disgorgement and it was restitution, meaning that the party that's damaged is entitled to restitution for the amount that the other side improperly received. And there was ample evidence in the record for that. And also, and I'd say to some of the cases, such as the U.S. versus Macedo case, which was a middle district case, where the court did talk about that you can get disgorgement when there's ill-gotten gains and that they said exactitude is not a requirement and where there's record keeping that's on the defendant's side that's not proper, that the court can set the disgorgement amount as the proceeds received from the transaction. And they even found that in some cases the total profits or gross revenue is the amount that could be ascertained. And in this case, that's what happened. We had the gross amounts that they received for this specific equipment. There was some testimony about some overhead that they incurred, some fuel costs, but there was also evidence in the record that the fuel was ultimately something that they were compensated for, that the repairs to the equipment would have been the trucks. So that's not really an issue because that wasn't part of the unjust enrichment as it relates to the full value. And then with regard to the other items of parts and other items that they indicated, there's also evidence in the record that they were paid for that. When you basically had a company here of Keith Kahlberg and Matt Kahlberg, two people that basically ran this mission, went over there and received all this money passed through Kahlberg, Florida by way of Lewis Berger, the general contractor. And there was no evidence submitted as to the amount of any of these supposed offsets. And the opposing counsel says it was our burden to come forward with that. But I submit that once we established the amounts that they received, the burden then becomes the burden to the defendant to say, well, that's not a proper amount. That's not the proper amount. And they didn't come up with that. They tried, but the district court rejected that and he rejected that in denying their motion to alter the judgment, finding that they didn't come forward with the evidence to establish that. So therefore, Your Honor, going back to your question, the disgorgement is a proper characterization because it is a restitutional remedy in this case to disgorge what is called the ill-gotten gains from the party that improperly failed to pay for it. And the record established that they delayed and delayed. And even after they got paid, they didn't pay my client. So therefore, the district court, we believe the district court was correct in its extensive findings. There was extensive evidence regarding the amounts. There was extensive evidence regarding the exact number of days for each item of equipment and the actual amount is all in the record. And the district court actually, when he granted my motion to alter or amend the judgment, actually went back and recalculated because he utilized an improper exhibit, but ultimately came up with the correct number, which was substantiated in the record. And that goes to my cross appeal, Your Honors. In the cross appeal, I've claimed that prejudgment interest, our belief is that prejudgment interest should have been awarded by the court because there was an exact number that the court awarded based upon exact figures, and it was all ascertained as of a specific time. And under Florida law, under- Let me ask you the prefatory question. The district court said, regarding your claim for prejudgment interest, that the issue had been waived because it was not raised by automotive experts until after the trial itself. Is that not correct? Well, I believe that we did raise it in our pleadings. We saw damages, plus under Florida law, prejudgment interest is merely, is another part of the pecuniary damages. And I think the district court found that the reason why he didn't award it is because he found that we did not do everything possible to mitigate our damages. And I would submit that the case law says not that you have to do everything possible, but there has to be a finding that we did not. But as I understand the district court determination, I thought he said two things. First, he said that the issue was waived because it was not raised by you folks until after the trial. And then he said in the alternative that even if he did consider the issue, he would not award prejudgment interest because, quote, you did not do everything that you could have done to mitigate your damages. That was an alternative holding. But I was asking about the first one. Is it fair to say you didn't really perfect that other than the various reference one or two times until after the trial and after the determination was made by the district court? Yes, that's correct. Our position is that prejudgment interest is just another measure of damages that the court would compute after a case is over. And that once you establish those damages in your case, and you establish that the specific date that the court should then immediately, or not immediately, but the court should then calculate the amount of the prejudgment interest based upon the damages that you proved at trial. So our position is that you don't have to actually plead prejudgment interest because all you have to do is plead damages and that the court later makes that determination. Now the issue of whether we did not do everything possible, I understand the burden is an abuse of discretion. It is a high burden. But our position is that by the court not finding that we did not do anything to mitigate our damages, that's what the court would have had to find. The case law doesn't say that you have to do everything to mitigate your damages. So that is our argument on that issue. Thank you. Thank you, Mr. Lee. Mr. Galvano, hello. Yes, thank you, Your Honor. I'm going to start with the last point very briefly. The 11th Circuit has found that prejudgment interest is not a rigid theory. It's a consideration of fairness. And Florida law has also found that it's non-absolute may depend on equitable considerations. And I would argue that the court found that. With regard to the argument Chief made in rebuttal, I believe at the beginning I established that the court had found that there were certain agreements, and that is correct with regard to personnel per diem for personal services for Kunkel and with the trust that ultimately were put into the overall number for disgorgement. But you hear a lot of terms being kicked around and used interchangeably, such as ill-gotten gain, restitution, all of these things that are part and parcel to a order of disgorgement. This court in Guyana Telephone and Telegraph found that once there was conscious wrongdoing, it's right to restitution. The Mastodon case involved some really horrible behavior. This is a case where people were training other people to fraudulently prepare tax returns to cheat the IRS. But even in that case that was cited, this middle district case, the court said there has to be some reasonable approximation to the ill-gotten gains. And again, this theme keeps coming back. And I would argue when a court finds simply that there's no meaning of the mind with regard to a certain aspect of financial relationship and then takes the next step of saying not give back the equipment, not look at the value of the equipment, but all revenues you receive for that portion of the mission, that component of it, I'm disgorging you of that and it goes to the other party. And that's the concern that we have here in terms of the court. And just real briefly, a delay in payment, that's not a conscious wrongdoing. Otherwise, mortgage or mortgagee law would be turned on its head if someone can be disgorged because they've delayed a payment. What we have here ultimately is a punitive application consistent with the case law provided by the appellate in which there's a general underlying bad act in the most cases, I believe. Thank you, Your Honors. Thank you, Counsel. We have your argument.